[*] Kirkpatrick, C. J.
— Sustained the challenge, and gave it as his opinion, that he himself was rendered ineligible by the supplement to the act, (the better to promote the impartial administration of justice) from sitting on the argument of the motion now depending, he having in the same cause, when under trial at the circuit, given an opinion on matters in question there; that the words of the act were clear and decisive, and could not be got over; that we must take the law as we find it, and cannot depart from it.[2]
[145] Pennington, J.
— I look upon this question of the first importance as to the administration of justice in this State. If we sustain the challenge, we may as well shut up the State House and go home. The most trifling question, in a cause, determined by the court, disqualifies the whole *185 court from further proceeding in it. It will, therefore, be impossible to bring a cause to an end. If the Legislature have intentionally determined that it shall be so, the power of making laws being in them, it must be submitted to; it cannot, nor ought not to be departed from by the court. I admit that the words of the act are broad enough to bear the construction given to them by the defendant; but I go upon what I conceive to be the design and intention of the Legislature. The law is obviously intended for the wisest and best purposes; that is, to keep clear and pure, the streams of justice, than which, nothing is more important to the security of property and personal rights. The act itself prohibits a justice or a judge of a court of record, from sitting on the trial or argument of any cause, in case he hath been attorney on record, or counsel for either party in such cause, or hath given his opinion in such relations. In all probability, it was found that this provision did not remedy the whole mischief. Judges may have given their opinions in other capacities, as referees, arbitrators, auditors, masters in chancery, judges in other courts, or extra ^judicially in advice to the parties. Hence the supplement, intended, as T apprehend, to prevent justices [*] or judges, standing in such situation, from sitting to hear the cause. But that the Legislature intended, that in case a justice or judge of a court of record should have given an opinion on a cpiestion arising incidentally in a cause, that he should in such case, be immediately disqualified from afterwards sitting to try the cause, or hear any argument vdiicli may subsequently arise in the progress of the same cause, is what I cannot bring my mind to believe. I look upon a trial at the circuit, so far as it respects this question, the same as a trial at bar; the same as though the jury were in the box here. A cause at issue in this court, is for the convenience; of the jurors, witnesses, and parties, sent to the county, to be tried before one of the justices of this court. The circuit in no way resembles a *186 proceeding in another court; it is in fact, a branch of this. Suppose then, in a trial at bar, the court should be called upon to decide a question inspecting the admission of testimony, can it be believed that the Legislature meant to say, that in such a case, the power of the court was at an end ? that the justices, by forming and delivering this opinion, [146] had become disqualified from further proceeding in the cause, that they could not sit to hear another argument on the admission of other testimony, or for a nonsuit, a new trial, arrest of judgment, or even on rendering judgment itself? This is too preposterous to be entitled to the least consideration. If the Legislature had intended to have changed the long established practice in our courts of law, and broken up the whole system, they would have certainly substituted some other in its place; they would not in this side-way have shut up the courts of justice. If, however, it should be thought that we are bound down to the precise letter of the act, and that the opinion which I have here advanced, is error, and that of so gross a kind as to be the cause of judicial animadversion on the justices falling into it, there is a reflection, even in this Anew of the subject, that Avill afford to a mind intent on the public good, a consolation that Avill countervail all [*] its evils; which is, that it is a thousand times better for the State, that the justices of this ' court should be displaced, and lose their seats, than that the doors of justice should be closed for near a year; that the operation of Iuav should be suspended, and right denied. Under the present vieAv which I have of the subject, I have no hesitation or reluctance in saying, that it is my opinion, that this challenge ought not to be sustained, but must be overruled.
Rossell, J. — Concurred with Pennington, J. in overruling the challenge.[1]
Challenge of the Chief Justice overruled.
*187 The court then proceeded to try the challenges against Rossell, J. and Pennington, J. As the facts were precisely the same, the same triors were charged Avith both challenges, Avhich they heard at the same time. A. D. Woodruff, F. Davenport and Thomas P. Johnson, Esquires, Avere saa-oiti as triors. It appeared in eAÚdence to the triors, that while the said Justices Rossell and Pennington were on the bench, a motion had been made for, and leave obtained, to suggest on the record, the death of one of the defendants, and an order made that the plaintiff proceed against the surviving defendant, under the provisions of our act of Assembly. Mr. Leake, on the part of the defendant, contended, that the justices, by sitting on the bench at the time of this proceeding, had formed and delivered an opinion in the cause, and therefore came Avithin the meaning, intent, and Avords of the act of Assembly, on which the challenges had been predicated. The triors found against the challenges. The challenges lnmng [147] been thus disposed of, the motion for a ucav trial Avas proceeded in.
It appeared by the report of the Chief Justice, (Avhich it is unnecessary to insert at length), that at the trial, the plaintiff1 set up a title, first from a purchase at sheriff’s sale, by his lessor, under an execution issued on [*] a judgment obtained in the Common Pleas of Burlington, in debt, at the suit of the lessor of the plaintiff, against Simpson, the deceased defendant, avIio had been in possession of the premises since 1780, until his death, vliich happened since the commencement of this ejectment, to Avit: in 1806. Second, from a sniwey made to the lessor of the plaintiff, and approved of by the council of proprietors, in 1803, for the same premises. The judgment on AAdiicli the land had been sold, had been obtained during the existence of an act of Assembly, commonly denominated Clark’s Practice Act. This act dispensed with the enrolling of the judgment, -and made the minutes and files of the court, evidencie of the judgment. *188 The declaration was not on the files of the court, and could not be found; and the entry of the judgment in the minutes of the court, was defective, being in this form; after stating the action, “ The declaration in this cause having, judgment is ordered, on motion of, &c.” The words been -filed, were omitted. The want of declaration and the defect in the entry of judgment in the action on which the land was sold, was set up by the defendant’s counsel as an objection to the plaintiff’s title, so far as it respected the purchase at sheriff’s sale. As to the survey, the defendant contended, that Simpson, under whom he claimed, being in possession at the time of the survey made and allowed, ought to have had six months’ notice, as required by the statute, Pat. 99, and for the want of such notice, the survey was void; and on these grounds, moved for a nonsuit. The Chief Justice overruled the motion for a nonsuit, and directed the jury to consider the judgment in the Common Pleas, as a regular and lawful judgment; and also directed the jury to find a verdict for the plaintiff — reserving the case, and allowing the defendant to move for a nonsuit thereupon at bar. The defendant, as before stated, had thought proper to move for a new trial.
Mr. Leake, for the defendant, now contended:
1st. That the rule for the judgment in the Common [*] Pleas, was senselesá and uncertain, and ought to pass for nothing.
2d. That the declaration was the essence of the action; when that was wanting, judges consider the judgment null and void; for which he cited 3 Blac. Com. 293; 2 Ld. Raym. 1410; Gilb. L. E. 17.
[148] He treated the practice act, existing at the time of obtaining the judgment, as a special authority, which must be strictly pursued; he cited the case of Penn v. Meeks,[1] in this court the last term, as according with what he had *189 advanced; that the plaintiff never obtained a final judgment, even if the blank in the rale for judgment was filled up.
Mr. Griffith, for the plaintiff,
said, that the plaintiff being a purchaser under public authority, was entitled to every benefit the law could afford him; that a sheriff’s deed reciting an execution and judgment, is sufficient of itself to maintain an ejectment; that a purchaser is not bound to show the judgment, as the execution is against the defendant, he might have applied to the court to quash it, if issued on no judgment; or if founded on an erroneous judgment, he might have brought a writ of error and reversed it; but could not have any relief in this indirect way; that an irregularity or error, could not be taken advantage of in this defense. If, however, it was necessary to prove a declaration, the entry of the judgment is evidence of it; that any matter might be shown to prove the existence of a record; that as to the notice, under the act of the Assembly, in the case of surveys, the act did not extend to this case.
Mr. Leaice, in reply,
said that a purchase at sheriff’s sale is not complete until the purchaser gets possession of the land.
This Mr. Griffith denied.
[*] Rossell, J.
— Was in favor of a new trial; considering the title of the lessor of the plaintiff, deficient in both points.
Pennington, J.
— The principal question for the consideration and determination of this court is, whether the judgment in the Common Pleas of Burlington, obtained by the lessors of the plaintiff, against the deceased defendant Simpson, is such a judgment as will enable the purchaser to hold land, levied on by virtue of an execution issued thereon, and sold under it. The reason and propriety of the thing leads to this manner of considering the subject. It would render titles to lands, very insecure, if every irregularity or informality in the proceedings on which the judgment was obtained, should vitiate the title, and tends very much to *190 discourage purchasers at sheriff’s sales to the great injury of defendants, whose lands would be suffered to pass out of their hands at an under value, from an apprehension that would be entertained by some purchasers, that at a future day, the title would be defeated by some latent flaw in the judgment. The Legislature hath been so sensible of this, that it hath gone so far as to protect purchasers, even in cases of reversals of judgment. [149] This view of the subject, hath driven the counsel for the defendant, to contend, that the judgment in the Common Pleas is void; in fact, that it is no judgment. To this point the attention of the court is, therefore, called. It is true, there is no judgment roll; but this was dispensed with at the time, by an act of Assembly; and by the same act, the minutes of the proceedings and files of the court, were substituted in lieu thereof; by these it appears, that a capias had been issued in the cause; that the defendant had been taken thereon, and brought into court; that at the time according with the course of the practice of the court, judgment is ordered; by the language of the entry of this order’, a fair inference is to be drawn, that the declaration had been filed in due time, and execution Avas issued on this judgment, and no exception taken by the defendant [*] in any stage of the proceedings; the land Avas sold under the execution; and on an ejectment uoav brought to get into possession of the land, it is discovered by the defendant in this action, that the declaration in the Common Pleas cannot be found; it is not on the files of the court. The question is not, Avhether the judgment in the Common Pleas is r'eversable for this cause, but whether it is void. I apprehend it is not. Here is an actual' entry of judgment, on motion of the attorney for the plaintiff; “Judgment is ordered.” If the title to land, sold under public authox'ity, is to depend upon the care and diligence of a clerk in preserving every paper filed in his office, respecting the judgment on Avhich the land is sold, Avho Avould purchase land depending on so *191 precarious a title ? Papers are not only exposed to accidents, but even to frauds and embezzlements. I am, on this point, of opinion, that the Chief Justice was right in refusing a nonsuit, and also, in directing the jury to find a verdict for the plaintiff, and that the rule asked for, ought to be refused. It is, therefore, unnecessary for me to give any opinion on the other point.
Kirkpatrick, C. J.
— Said that on more deliberate consideration of the subject, he was of opinion, that the proceedings in the Common Pleas could not be viewed as a judgment, and that his direction to the jury, on that point, was incorrect. But on the second point, that is, as to the validity of the survey, he was of opinion, that the lessor of the plaintiff derived a good title from it, and, therefore, that the rule for a new trial ought to be refused.
By the Court. — Motion for a new trial refused.
Mr. Leake, on another day wished to be heard on the effect of the opinion of the court in this cause, on the ground, that as the majority of the court had not agreed in opinion on either point raised, that there was no decision. But the court said, that a majority of the court agreeing to refuse the motion, there was no difficulty or doubt as to the effect of such refusal.

 The difficulty in this case has been entirely removed, and the matter settled in conformity to the opinion of Judge Pennington, and to common sense, by the act of 24th of February,-1820, repealing and supplying the former act. Rev. 688. — Ed,

 Vide Pen. 1051-2. — Ed.